Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50112 | **DATE** | 6/14/2002 |
| **CASE TITLE** | KASPER TRUCKING, INC. vs. GENERAL CHAUFFEURS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, plaintiffs' motion to strike is granted. Plaintiff's motion for partial summary judgment is granted as to Count I and denied as to Count II. Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUN 14 2002 | 31 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUN 14 PM 3:51 FILED-ND | | |
| /SEC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# MEMORANDUM OPINION AND ORDER

Plaintiffs, Kasper Trucking, Inc. ("Kasper") and Rockford Blacktop Construction Co. ("Blacktop") filed a two count complaint against defendant, General Chauffeurs, Salesdrivers and Helpers, Local Union No. 330. Count I asserts defendant committed an unfair labor practice in violation of section 303 of the Labor Management Relations Act. 29 U.S.C. § 187(a). Count II is a state law claim for tortious interference with contractual relations. Jurisdiction is proper under 29 U.S.C. §§ 185(c), 187(b) and 28 U.S.C. §§ 1331, 1367. Defendant moved for summary judgment. Plaintiffs moved for partial summary judgment as to liability. Plaintiffs also moved to strike portions of the affidavit of Gary Johnson filed by defendant.

The facts are mostly uncontested. Kasper was hired by Blacktop to provide hauling services to a job site in Dekalb, Illinois. (Pl. LR 56.1 ¶ 6) The job site is within the defendant's jurisdiction. (Id. ¶ 8) Kasper hired independent owner-operators to provide the hauling services, including bringing gravel to the job site and taking dirt from the job site to Elmer Larson Quarry. (Id. ¶ 9) On March 29, 2001, defendant's representatives went to the job site and asked the owner-operators to show their union cards and to tell what they were paid per hour. (Id. ¶ 18) They generally responded $51.04 but did not specify how much of the rate was allocated to wages or fringe benefits, nor did they discuss their operating costs. (Id. ¶¶ 19-22) Defendant then contacted Kasper inquiring about the owner-operators' wage package, including health and welfare and pension benefits. (Id. ¶ 23,25) Kasper responded the owner-operators were not employees and were paid at a rate of $51.04 per hour, which exceeds area standards. (Id. ¶¶ 24,26) On March 30, 2001, defendant began picketing at the job site, Elmer Larson Quarry and Blacktop's gravel pit with signs stating defendant was on strike against the owner-operators and that the owner-operators paid their employees substandard wages and benefits. (Id. ¶¶ 29,31; Def. LR 56.1 ¶ 9) Typically, the owner-operators had no employees other than themselves. (Pl. LR 56.1 ¶ 32) The picketing continued at the job site and Elmer Larson Quarry on April 2 and 3, 2001 and additional picketing occurred on April 4, 2001. (Id. ¶¶ 35-36, 38,40) On April 2 and 3, 2001 the loading of the trucks at the quarry was stopped for a time due to the picketing. (Id. ¶¶ 37,39) Defendant's picketing was based on an alleged violation of area standards based on the amount Kasper paid the owner-operators. (Id. ¶ 45) Plaintiffs allege they, rather than the owner-operators, were the real targets of the picketing and that defendants actions were therefore in violation of 29 U.S.C. § 158(b)(4)(i),(ii)(B). (Compl. ¶¶ 6-7)

Plaintiffs moved to strike portions of the affidavit of Gary Johnson filed by defendant for failure to produce or disclose during discovery. The calculation of operating costs provided in paragraph seven of the affidavit was not disclosed and the document entitled "Schedule of Average Annual Equipment Ownership Expense" ("Schedule") was not produced during discovery. Defendant acknowledges it wrongfully failed to produce the document (Resp. Mot. Strike pp. 1-2), but argues plaintiff was not prejudiced. Defendant cites no authority in support of its position. A failure to disclose information required by Fed. R. Civ. P. 26(a) results in automatic and mandatory exclusion of the evidence unless the party offering the evidence can show the violation was either justified or harmless. See Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996). Defendant argues only that it referenced the document in its answer to interrogatories. This does not relieve it of its obligation to produce the document pursuant to plaintiffs' request. Even more significant, is defendant's failure to disclose the calculation it performed to determine operating costs in the face of express interrogatories seeking the calculation. Plaintiffs were denied the opportunity to evaluate and investigate this information in a timely manner. Defendant has not met its burden of showing its violation was justified or harmless. Paragraph seven and the Schedule are stricken from Gary Johnson's affidavit. Additionally, plaintiffs ask that paragraph eleven of the affidavit be stricken because it states a legal conclusion that defendant did not threaten or coerce any person or employer with respect to this dispute. The court agrees paragraph eleven is an expression of a legal opinion, in essence a statement defendant did not violate the law, that should be stricken.[1] See Pfeil v. Rodgers, 757 F.2d 850, 862 (7th Cir. 1985), cert. denied, 475 U.S. 1107 (1986).

The parties agree the crucial issue in this case is whether defendant engaged in valid area standards picketing against the owner-operators. Defendant asserts that if the owner-operators "do not reap a profit after expenses equal to the wages and benefits of the area standards, they are undercutting those standards." (Def. Resp. p. 3.) A prerequisite to valid area standards picketing is an investigation by the union which shows the employer is in fact paying wages below the union's area standard. See NLRB v. Great Scot, Inc., 39 F.3d 678, 683 (6th Cir. 1994); O'Neil's Markets v. United Food and Commercial Workers' Union, 95 F.3d 733, 738 (8th Cir. 1996). The record does not show a pre-picketing investigation revealing wages below area standards. The record shows defendant's representatives asked the owner-operators what they were paid, that the answer was an amount exceeding area standards, that defendant asked Kasper what the owner-operators received and received the same answer. There is no evidence defendant found through investigation that the owner-operators' expenses when subtracted from the $51.04 they were paid resulted in a net less than defendant's area standards. No evidence of expenses is in the record. Defendant's picketing was not a valid area standards action and it is undisputed the picketing induced employees of the quarry to stop the loading of trucks leased by Kasper to perform a contract for Blacktop (Pl. LR 56.1 ¶¶ 37, 39), a violation of 29 U.S.C. 158(b)(4).

Plaintiffs also assert an Illinois law tortious interference with contract claim. The elements of this tort are 1) a valid contract between plaintiff and a third party; 2) defendant's awareness of the contract; 3) defendant's intentional and unjustified inducement of a breach of the contract; 4) a subsequent breach by the third party caused by defendant's wrongful conduct; 5) damages resulting from the breach. Wheel Masters, Inc. v. Jiffy Metal Products Co., 955 F.2d 1126, 1129 (7th Cir. 1992)(applying Illinois law). Plaintiffs have not presented evidence of a breach of contract by the quarry, the owner-operators or by either of plaintiffs to the other. The only evidence is that some of the quarry's employees stopped loading the owner-operator's trucks for some period of time. Plaintiffs offer no explanation or authority to support the view that the quarry breached its contract with plaintiffs because the quarry's union-member employees refused to load the owner-operators' trucks. Defendant has not advanced any argument in support of summary judgment in its favor on Count II.

For the foregoing reasons, plaintiffs' motion to strike is granted. Plaintiffs' motion for partial summary judgment is granted as to Count I and denied as to Count II. Defendant's motion for summary judgment is denied.

---

[1] Paragraphs 8 and 13 of Defendant's LR 56.1 statement are stricken as they are based on the stricken portions of the affidavit.